UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

           Plaintiff,

        -against-

C.Y. GOLD LLC, <u>et</u> <u>al.</u>,

           Defendants.
-----------------------------------------------------X

REPORT AND
<u>RECOMMENDATION</u>
24 CV 1314 (OEM)(RML)

LEVY, United States Magistrate Judge:

      By order dated October 15, 2025, the Honorable Orelia E. Merchant, United States District Judge, referred plaintiff's uncontested motion for summary judgment to me for report and recommendation.  For the reasons stated below, I respectfully recommend that the motion be granted.

<h3 style="text-align:center">BACKGROUND AND FACTS[1]</h3>

---

[1]    Unless otherwise noted, all facts are taken from plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated July 31, 2024 ("Rule 56.1 Statement") (Dkt. No. 27-1).  <u>See</u> LOC. CIV. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the [Local Civ. R. 56.1] statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").  As permitted by Rule 56(e) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1746, the court also relies in part on sworn affidavits setting forth admissible facts based on personal knowledge and unsworn, written declarations "subscribed . . . as true under penalty of perjury, and dated."  <u>See</u> FED. R. CIV. P. 56(e); 28 U.S.C. § 1746.

No defendant has responded to plaintiff's Rule 56.1 Statement.  A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. Loc. Civ. R. 56.1(c).  The facts set forth in a moving party's statement will be deemed admitted unless controverted by the opposing party's statement.  <u>See</u> <u>Gittens-Bridges v. City of New York</u>, No. 22 CV 810, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (quoting <u>T.Y. v. N.Y.C. Dep't of Educ.</u>, 584 F.3d 412, 418 (2d Cir. 2009))); <u>Aptive Env't, LLC v. Vill. of E. Rockaway</u>, No. 21 CV 677, 2022 WL

(Continued….)

Plaintiff Federal National Mortgage Association ("plaintiff" or "Fannie Mae") commenced this commercial mortgage foreclosure action on February 21, 2024 against defendants C.Y. Gold LLC, Stagg Equities LLC, 486 K Equities LLC, Mayer Kohn, the New York City Environmental Control Board[2], and John Does #1 through #20.[3]  (See Complaint, dated Feb. 21, 2024 ("Compl."), Dkt. No. 1.)  Plaintiff seeks foreclosure of the properties at 179 Russell Street, Brooklyn, New York 11222 (the "Russell Property"); 323 Stagg Street, Brooklyn, New York 11206 (the "Stagg Property"); and 486 Kosciuszko Street, Brooklyn, New York 11221 (the "Kosciuszko Property") (collectively, the "Properties"), all multi-unit apartment buildings. (Id. ¶ 1.)  According to the complaint, plaintiff's consolidated mortgage on the Properties secures a loan in the principal amount of $7,726,500, which has been in default since September 1, 2023. (Id.)  Defendants C.Y. Gold LLC, Stagg Equities LLC, and 486 K Equities LLC (the "Borrowers"), as well as defendant Mayer Kohn (the "Guarantor") (collectively, "defendants"), answered the complaint on April 15, 2024 (see Answer, dated Apr. 15, 2024 ("Answer"), Dkt. No. 13), but have not opposed plaintiff's summary judgment motion, filed on August 8, 2025. (See Plaintiff's Motion for Summary Judgment of Foreclosure and Sale, dated Aug. 8, 2025, Dkt. No. 39; Letter of Dean Lindsay Chapman, Jr., Esq., dated Sept. 11, 2025, Dkt. No. 44.)

---

211091, at *2 (2d Cir. Jan. 25, 2022) ("So long as the moving party's Rule 56.1(a) statement includes citations to admissible evidence, '[i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.'" (alteration in original) (quoting Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003))).

[2]  By order dated August 7, 2025, Judge Merchant granted a default judgment against this defendant.  (See Order Adopting Report and Recommendation, dated Aug. 7, 2025.)

[3]  Plaintiff requests that the court amend the caption of this action to strike the names "JOHN DOE #1" through "JOHN DOE #20" because, "upon information and belief, no parties other than the Defendants previously named and served in this action have a subordinate interest in or lien upon [the] Properties to be extinguished in this action."  (Plaintiff's Memorandum of Law, dated Aug. 8, 2025, Dkt. No. 40, at 2, 17.)  I respectfully recommend that the request be granted.

Plaintiff has established that on January 26, 2021, the Borrowers executed an Amended and Restated Multifamily Note (the "Note") for the benefit of Greystone Servicing Company LLC ("Greystone"), the original lender.  Under the terms of the Note, the Borrowers agreed to pay the Note holder (the "Lender") the sum of $7,762,500 plus interest.  (See Declaration of Dean L. Chapman, Jr., Esq., dated July 31, 2024 ("Chapman Decl."), Dkt. No. 27-2, Ex. 1-A.)  On the same date, the Borrowers and Greystone entered into a Multifamily Loan and Security Agreement (the "Loan Agreement"), under which the Borrowers were required to make monthly payments to the Lender on the first day of each month from March 1, 2021 through February 1, 2031.  (See id., Ex. 1-B.)  To secure their indebtedness under the Note, the Borrowers simultaneously executed a Consolidation, Extension and Modification Agreement (the "Consolidation Agreement"), which was recorded in the New York City Department of Finance Office of the City Register on February 11, 2021, File No. 2021000052889.  (Id., Ex. 1-C.)  Pursuant to the Consolidation Agreement, the Borrower-Defendants and Greystone entered into a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Consolidated Mortgage Agreement"), under which the Borrowers mortgaged to Greystone the Properties, including the structures and buildings, the leases, and the rents and income received (the "Mortgage").  (Id.)  The Consolidated Mortgage Agreement consolidates prior mortgages recorded against the Properties dating back to March 16, 2015 (in the case of the Russell Property), March 31, 2005 (in the case of the Stagg Property), and May 8, 2007 (in the case of the Kosciuszko Property).  (Id.)  On the same date, January 26, 2021, the Guarantor—the sole member of each of the Borrowers—executed a Guaranty of Non-Recourse Obligations to and for the benefit of Greystone (the "Guaranty").  (Chapman Decl., Ex. 1-D.)

Greystone assigned the Mortgage and Note to plaintiff via an Assignment of Mortgages as Consolidated (the "Mortgage Assignment"), which was recorded in the New York City Department of Finance Office of the City Register on February 11, 2021, File No. 2021000052890.  (See id., Ex. 1-E.)  On January 29, 2021, Greystone executed an Assignment of Collateral Agreements and Other Loan Documents to plaintiff (the "Collateral Agreements Assignment"), which assigned to plaintiff agreements including the Loan Agreement, the Guaranty, and all other Loan Documents "executed in connection with the Mortgage Loan."  (Id., Ex. 1-F.)  Greystone then delivered the Note to Fannie Mae, which remains in physical possession of the Note, and indorsed the Note to Fannie Mae, making it payable to the order of Fannie Mae without recourse.  (Declaration of James Noakes, dated July 21, 2024 ("Noakes Decl."), Dkt. No. 27-9, ¶¶ 15-16.)

Under § 14.01(a) of the Loan Agreement, any failure by the Borrowers to pay or deposit any amount required by the Loan Documents, including the failure to make a monthly payment, is deemed an automatic "Event of Default."  (See Chapman Decl., Ex. 1-B, § 14.)  Under Section 5 of the Consolidated Mortgage Agreement, following an Event of Default, the Lender may declare the entire amount of the indebtedness immediately due and payable and may institute judicial foreclosure proceedings.  (See id., Ex. 1-C, § 5(a).)

The Borrowers defaulted under the terms of the Loan Documents by failing to make monthly payments of principal, interest and other charges beginning with the payment due for September 2023 and continuing with each monthly payment due thereafter.  (Noakes Decl. ¶ 35.)  On January 3, 2024, plaintiff sent a letter to the Borrowers notifying them that they were in default of their obligations under the Loan Documents by virtue of their failure to pay the

monthly payments due since September 1, 2023.[4]  (See Chapman Decl., Ex. 1-G.)  Plaintiff states that, as of June 30, 2024, there was $8,137,150.29 due and owing under the Loan Documents, including principal and interest.  (Noakes Decl. ¶ 45, Ex. E.)

### DISCUSSION

A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed." Creaven v. Erickson, No. 22 CV 874, 2023 WL 4247213, at *3 (2d Cir. June 29, 2023) (quoting Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir. 2014)).  Rather, "[i]n deciding an unopposed summary judgment motion, 'the district court must still assess whether the moving party ha[s] fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.'"  Jones v. Lamont, 379 F. App'x 58, 59 (2d Cir. 2010) (second alteration in original) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)); see also Gachette v. Metro North-High Bridge, 598 F. App'x 803,

---

[4]  "As a general matter, in New York a lender is not required to notify a borrower of its default on a mortgage prior to foreclosure, absent a statutory requirement or a contractual provision in the relevant loan documents."  NuBridge Com. Lending REO SPV I Inc. v. KA & B Props., Inc., No. 22 CV 1468, 2023 WL 11261908, at *6 (E.D.N.Y. Oct. 18, 2023) (citing HPHD Invs. Grp., LLC v. Ioannou, 137 N.Y.S.3d 484, 486 (2d Dep't 2020)), report and recommendation adopted, 2024 WL 1364321 (E.D.N.Y. Mar. 31, 2024).  Since this case involves a commercial mortgage and not a home loan, there is no statutory requirement to serve a pre-foreclosure notice.  See Allison Lending, LLC v. NLL Props. Inc., No. 23 CV 9385, 2025 WL 4072638, at *3 (E.D.N.Y. Oct. 28, 2025) (collecting cases).  Moreover, the Loan Documents contain no terms requiring any such notice.  (See Chapman Decl., Ex. 1-C (stating that, following an Event of Default, Fannie Mae is entitled to "declare the Indebtedness to be immediately due and payable without further demand, and may. . . proceed by suit or suits at law in equity . . . to foreclose this Security Instrument judicially").)

804 (2d Cir. 2015) ("[W]here a summary judgment motion is wholly unopposed, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." (quoting Vt. Teddy Bear Co., 373 F.3d at 244)); Martin v. Nieuw Amsterdam Prop. Mgmt., LLC, No. 22 CV 3506, 2025 WL 1504124, at *5 (E.D.N.Y. May 27, 2025) ("The Second Circuit has explained that a district court may not enter a default judgment when a party fails to respond to an opponent's motion for summary judgment and must instead 'examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment.'" (quoting Jackson, 766 F.3d at 197)).

In foreclosure actions where a motion for summary judgment is fully unopposed but the non-movant has previously filed an answer, courts consider whether the affirmative defenses raise genuine disputes of material fact that defeat the prima facie case.  See, e.g., Millennium Tr. Co., LLC v. Tr. for Benefit of William E. Kassar III, No. 23 CV 5094, 2025 WL 1017517, at *5 (E.D.N.Y. Apr. 4, 2025) ("Despite Defendants' failure to oppose the motion, the Court must nonetheless examine the affirmative defenses raised in the answer to ensure that none of those defenses raise a triable issue of fact that would preclude summary judgment" (citing Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409, 416 (E.D.N.Y. 2018))); AKF, Inc. v. Haven Transp. Bus. Sols., Inc., No. 22 CV 269, 2024 WL 2941746, at *5-10 (N.D.N.Y. June 11, 2024) (evaluating affirmative defense raised in the defendants' answer in foreclosure action despite their failure to respond to the motion for summary judgment).  However, "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d

Cir. 2002); see also Razzano v. Remsenburg-Speonk Union Free Sch. Dist., No. 20 CV 3718, 2022 WL 1715977, at *3 (2d Cir. May 27, 2022) (same).

B. Standing

Since plaintiff is not an original party to the Note, I will briefly address plaintiff's standing to bring this foreclosure action. "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" E. Sav. Bank, FSB v. Thompson, 631 F. App'x 13, 15 (2d Cir. 2015) (summary order) (quoting Wells Fargo Bank, N.A. v. Rooney, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)). So long as the Note is transferred through physical delivery or a written assignment before the foreclosure action is commenced, "the mortgage passes with the debt as an inseparable incident." Thompson, 631 F. App'x at 15 (quoting U.S. Bank, N.A. v. Collymore, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)); see also Lasalle Bank Nat'l Ass'n v. Ahearn, 875 N.Y.S.2d 595, 597 (3d Dep't 2009) ("[A]n assignee of such a mortgage does not have standing to foreclose unless the assignment is complete at the time the action is commenced."). The execution date is controlling as an effective date of the assignment when the assignment is in writing. Lasalle Bank, 875 N.Y.S.2d at 597.

Here, prior to commencement of this action, Greystone delivered the Note to Fannie Mae pursuant to written assignment, physical delivery, and indorsement. (See Noakes Decl. ¶¶ 12-16.) Fannie Mae therefore has standing to maintain this action.

C. Foreclosure

"In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." U.S. Bank, N.A. v. Squadron VCD, LLC, 504 F. App'x 30, 32 (2d Cir. 2012) (summary order) (first citing

7

R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 n.2 (2d Cir. 1997); and then citing United States v. Freidus, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)).  Thus, "a plaintiff in a foreclosure action establishes prima facie entitlement to summary judgment 'by producing evidence of the mortgage, the unpaid note, and the defendant's default.'"  CIT Bank N.A. v. Donovan, 856 F. App'x 335, 336 (2d Cir. 2021) (summary order) (quoting Wells Fargo Bank, N.A. v. Walker, 35 N.Y.S.3d 591, 592 (2016)); see also JPMorgan Chase Bank, Nat. Ass'n v. Weinberger, 37 N.Y.S.3d 286, 289 (2016).  "This creates a 'presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.'"  Freedom Mortg. Corp. v. Heirs, No. 19 CV 1273, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) (quoting E. Sav. Bank, FSB v. Evancie, No. 13 CV 878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014)).

Plaintiff has demonstrated its entitlement to summary judgment of foreclosure and sale.  First, it has submitted executed copies of the Loan Documents, which describe the terms of the Borrowers' repayment obligations under the loan and provide that the Borrowers' obligations are secured by the Properties.  (See Chapman Decl., Exs. 1-A, 1-B, 1-C.)

Second, plaintiff has established that the Borrowers defaulted on their obligations under the Loan Documents by failing to pay plaintiff all amounts due on the loan starting with the payment due for September 2023 (Noakes Decl. ¶ 35), and that $7,361,988.23 remains unpaid (id. ¶ 46).  The Borrowers' nonpayment of loan obligations establishes plaintiff's "presumptive right to foreclose."  Heirs, 2020 WL 3639989, at *4 (plaintiff-mortgagee established prima facie case and was entitled to foreclose where it produced the note and mortgage, as well as documentation of the defendant's nonpayment of loan obligations, and motion for summary judgment was unopposed).

The burden then shifts to defendants to make an affirmative showing of a "bona fide defense to the action," Gustavia Home, LLC v. Rutty, 785 F. App'x 11, 14 (2d Cir. 2019) (summary order) (quoting Capstone Bus. Credit, LLC v. Imperia Family Realty, LLC, 895 N.Y.S.2d 199, 201 (2010)), such as "fraud, duress, oppressive or unconscionable actions, or bad faith," OneWest Bank, NA v. Rubio, No. 14 CV 3800, 2015 WL 5037111, at *2 (S.D.N.Y. Aug. 26, 2015) (citation omitted).  In this case, defendants waived their right to assert any defenses in a pre-negotiation letter executed on July 8, 2024, which expressly acknowledged that "each of the Loan Documents is valid, fully enforceable in accordance with its terms, and evidences legal and binding obligations which are in full force and effect" and "that the Loan is in default and that the Loan was properly accelerated by Fannie Mae."  (See Noakes Decl. ¶¶ 39-42, Ex. A ¶¶ 3, 7.)  Courts regularly uphold such waivers as valid and enforceable.  See, e.g., 12th St. Realty Partners, LLC v. Builders Bank, No. 12 CV 425, 2013 WL 2351350, at *4 (E.D.N.Y. May 23, 2013) (finding that defendant had no defense to assertion of default since it waived all defenses to enforcement by plaintiff of its rights); MM Ariz. Holdings LLC v. Bonanno, 658 F. Supp. 2d 589, 595 (S.D.N.Y. 2009) (finding that written agreement precluded defendants' affirmative defenses relating to loan); Inland Mortg. Capital Corp. v. Realty Equities NM, LLC, 900 N.Y.S.2d 79, 80 (2d Dep't 2010) (holding that defenses raised by mortgagor and its guarantor in opposing summary judgment on issue of their liability under notes and guaranty did not raise triable issue of fact where mortgagor and guarantor waived their right to assert defenses or counterclaims).  Indeed, courts have found the waivers in Fannie Mae pre-negotiation letters virtually identical to the one at issue here fully enforceable.  See, e.g., Fed. Nat'l Mortg. Ass'n v. 1488 Bushwick, LLC, 2025 WL 745959, at *4 (E.D.N.Y. Mar. 7, 2025) ("The PNL, by its clear terms, limits Defendants' ability to argue against the rights and remedies that Plaintiff seeks.").

As defendants have failed to produce any evidence or legal arguments in support of their affirmative defenses and have not made any attempt to rebut plaintiff's prima facie case, plaintiff has established that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  See Wells Fargo Bank, Nat. Ass'n as Tr. for Holders of COMM 2014-CCRE15 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 840 Westchester Ave. NMA, LLC, 786 F. Supp. 3d 586, 597 (S.D.N.Y. 2025) (granting summary judgment where lender made prima facie case of foreclosure, borrowers had neither appeared nor made an affirmative showing that plaintiff was not entitled to foreclosure, and "the record [did not] reveal bad faith, fraud, duress, or otherwise oppressive or unconscionable actions"); U.S. Bank Nat. Ass'n v. Joeefi LLC, No. 24 CV 3966, 2025 WL 1019112, at *3 (S.D.N.Y. Apr. 4, 2025) (granting motion for summary judgment where the plaintiff established prima facie case and the defendants did not oppose the summary judgment motion or present any evidence to overcome the plaintiff's prima facie case); Greenlight Cap., Inc. v. Fishback, No. 24 CV 2299, 2025 WL 965597, at *6 (S.D.N.Y. Mar. 31, 2025) (finding affirmative defenses pleaded in answer for which the defendant "proffer[ed] no evidence or legal arguments in support" were insufficient to defeat summary judgment in foreclosure action); Heirs, 2020 WL 3639989, at *2, *4-5 (granting summary judgment where plaintiff-mortgagee established prima facie case and motion was unopposed); Alpha Cap. Anstalt v. Shiftpixy, Inc., 432 F. Supp. 3d 326, 344 (S.D.N.Y. 2020) (granting summary judgment on foreclosure and sale where the defendant-borrower "failed to respond in any substantive way to defend its counterclaim").

10

D. Damages

1. Outstanding Principal Balance

The original principal sum lent to the Borrowers was $7,762,500. (See Chapman Decl., Ex. 1-A.) As of June 30, 2024, the outstanding principal balance on the Loan was $7,361,988.23. (Noakes Decl., Ex. E.)

2. Interest

Under the terms of the Loan Documents, from March 1, 2021 to February 1, 2031, interest was to accrue on the unpaid principal balance of the loan at a rate of 3.1 percent per annum (the "Contract Interest Rate"). (See Chapman Decl., Ex. 1-A, § 2; Ex. 1-B, Schedule 2.) Section 2.02(d)(1)(A) of the Loan Agreement further provides that, if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty days or more, then interest on such unpaid amounts shall bear interest at the "Default Rate," which is four percent. (See Chapman Decl., Ex. 1-A, § 2; Ex. 1-B, § 2.02(d)(1)(A), Schedule 1 (definition of "Default Rate"); Noakes Decl. ¶ 48.)

The Contract Rate Interest due on the principal was never paid and remains outstanding for the month of August 2023 (i.e., the payment due September 1, 2023) to the present. (Noakes Decl. ¶ 47.) The total amount of unpaid Contract Rate interest for the Loan (August 2023 through June 2024) is $212,372.92. (Id.) Additionally, interest has accrued at the Default Rate since September 1, 2023, based on the Borrowers' failure to make monthly payments. The amount of interest due and owing at the Default Rate for the period September 1, 2023 through June 30, 2024 totals $248,671.60. (Id. ¶ 49.) Because the Borrowers also owe interest on late payments at the Default Rate, totaling $2,570.01, the total amount of interest due and owing at the Default Rate for the Loan is $251,241.61 as of June 30, 2024. (Id. ¶¶ 48-49.)

11

3.   Tax and Insurance Advances

The Borrowers were required to pay taxes to the City of New York on multiple occasions but failed to do so.  (Id. ¶ 50.)  Therefore, plaintiff made the payments, advancing funds for payment of taxes on December 14, 2023; March 13, 2024; and June 20, 2024.  (Id.) The tax advances total $16,537.61 and should be added to the total indebtedness due under the Loan Documents.  (See Chapman Decl., Ex. 1-B, §§ 2.01(a), 2.03(c), 14.02(a); Ex. 1-C, Schedule 1 (definition of "Indebtedness"), §§ 4, 5(d).)

In addition, the Borrowers are required to keep the Properties properly insured but failed to do so.  (Noakes Decl. ¶ 51.)  Plaintiff therefore advanced funds to cover the insurance premiums on February 22, 2024; March 15, 2024; March 28, 2024; April 24, 2024; May 6, 2024; and May 30, 2024.  (Id.)  The insurance advances total $72,239.80 and should be added to the total indebtedness due under the Loan Documents.  (See Chapman Decl., Ex. 1-B, §§ 2.01(a), 2.03(c)(4), 9.02(a), 9.03(a), 14.02(a); Ex. 1-C, § 1 (definition of "Indebtedness"), § 4(c).

4.   Additional Fees

Under § 2.02(c) of the Loan Agreement, if any amount payable is not received by the Lender within ten days of the due date, the Borrowers are required to pay a late charge.  (See id., Ex. 1-B, § 2.02(c).)  The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate.  (Id.)  For the months of September 2022 and November 2022 through December 2023 (i.e., fifteen months total), the Borrowers failed to make timely payments under the Loan Documents and late fees were assessed in the total amount of $23,050.10.  (Noakes Decl. ¶ 55.)  Plaintiff ceased charging late fees following acceleration of the debt on January 3, 2024.  (Id.)

12

In addition, under §§ 2.03(a)(1), 2.03(c)(3) and 14.02(a) of the Loan Agreement, the Borrowers are required to pay a Prepayment Premium upon acceleration of the Loan and/or an Event of Default. (See Chapman Decl., Ex. 1-B, §§ 2.03(a)(1), 2.03(c)(3) and 14.02(a).) Such amount is included in the overall indebtedness due under the Loan Documents. (See id. Ex. 1-C, § 1 (definition of "Indebtedness").) The Prepayment Premium is calculated under Schedule 4 of the Loan Agreement, and the formula factors in the remaining period of time in which payments would be due under a normal schedule and discounts those future payments to present value. Here, the Prepayment Premium is $73,619.88. (Noakes Decl. ¶ 57.)

On a number of occasions, the Borrowers attempted to make payments that could not be honored due to insufficient funds. The fee for such returned payment attempts increased from $25 to $50 beginning in 2022. For the months of December 2021, June 2022, July 2022, November 2022 through April 2023, and July 2023 through September 2023, plaintiff received a chargeback notice due to insufficient funds in the account the Borrowers had provided for automatic payment. In addition, for the months of December 2022, April 2023, and September 2023, the Borrowers attempted to make manual payments that resulted in further chargeback notices due to insufficient funds, with two such attempts being made in the month of September 2023. Plaintiff is therefore entitled to $775 in fees in attempting to deposit the checks, and these should be added to the total indebtedness due under the Loan Documents. (See Chapman Decl., Ex. 1-C, § 5(d).)

Finally, in order to terminate the Uniform Commercial Code ("UCC") filing in connection with the Mortgage after payoff of the loan, plaintiff must incur a $200 UCC Termination Fee. The UCC Termination Fee should be added to the total indebtedness. (See Chapman Decl., Ex. 1-C, § 5(d).) In addition, in connection with the payoff of the loan and UCC

13

termination, plaintiff must incur a $600 release fee.  (Noakes Decl. ¶ 60.)  The release fee should be added to the total indebtedness due.  (See Chapman Decl., Ex. 1-C, § 5(d).)

     5.  Credits

Under § 13.01(a) of the Loan Agreement, the Borrowers were required to make an initial payment of $12,812.50 for deposit into a repairs escrow account to pay for repairs associated with the Properties.  (Chapman Decl., Ex. 1-B, § 13.01(a).)  There is presently a balance of $12,812.50 in the repair account.  (Noakes Decl. ¶ 62.)  In addition, under § 13.01(b) of the Loan Agreement, the Borrowers are required to make monthly payments into a replacement reserve account to pay for replacements associated with the Properties.  (Chapman Decl., Ex. 1-B, § 13.01(b).)  There is presently a balance of $13,188.93 in the replacement reserve account.  (Noakes Decl. ¶ 61.)  These amounts should be credited against the total indebtedness due under the Loan Documents.

In sum, plaintiff states that the total amount due to plaintiff under the Loan Documents as of June 30, 2024 was $8,137,150.29[5] (see Noakes Decl. ¶ 45, Ex. E), with interest continuing to accrue until judgment is entered.

    E.  Legal Fees and Costs

Under the Consolidated Mortgage Agreement, the Borrowers agreed to pay "[a]ll expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount

---

[5]  This total includes $124,525.14 in legal fees (see Noakes Decl., Ex. E); however, as explained below, I recommend that plaintiff be awarded a lower amount of attorney's fees.  Subtracting $124,525.14 leads to a total of $8,012,625.15.  Subtracting the $26,001.43 in credits for the repair account and replacement reserve then leads to a final total of $7,986,623.72.

due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents." (See Chapman Decl., Ex. 1-C § 1 (definition of "Enforcement Costs").) The Borrowers further agreed to pay all attorney's fees and expenses under Section 5 of the Consolidated Mortgage Agreement and Section 4.02(g)(3) of the Loan Agreement. (Id. § 5(d); Ex. 1-B, § 4.02(g)(3).)

Plaintiff states that, as of June 30, 2024, it has incurred $111,344.50 in legal fees and $13,180.64 in costs enforcing the defaulted mortgage and pursuing this foreclosure action. (See Id. ¶ 32.) "A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award." See U.S. Bank Nat. Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey, No. 20 CV 91, 2022 WL 1422841, at *10 (E.D.N.Y. Mar. 24, 2022), report and recommendation adopted, 2022 WL 2390989 (E.D.N.Y. July 1, 2022). However, "an award of attorneys' fees pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." Exec. Risk Indem., Inc. v. Fieldbridge Assocs. LLC, 642 F. App'x 25, 25 (2d Cir. 2016) (summary order); see also Carco Grp., Inc. v. Maconachy, 718 F.3d 72, 86 (2d Cir. 2013) ("[T]he touchstone for an award of attorneys' fees pursuant to a contract is reasonableness."); Proimmune Co. v. Holista Colltech Ltd., No. 20 CV 1247, 2024 WL 54281, at *1 (S.D.N.Y. Jan. 4, 2024) (where the contract "unmistakabl[y]" entitles plaintiff to a fee award, the court must still "examine whether Plaintiff's request is reasonable") (citation omitted). Even where defendants do not dispute any portion of the requested fees and costs, "a court has the discretion to conduct an independent analysis to determine if the requested fees are reasonable." U.S. Bank Tr. Co., Nat. Ass'n as Tr. of Certificateholders of Natixis Com. Mortg. Sec. Tr. 2022-JERI, Com. Mortg. Passthrough Certificates Series 2022-JERI v. Jericho Plaza Portfolio LLC,

15

No. 24 CV 917, 2026 WL 476134, at *8 (S.D.N.Y. Jan. 30, 2026) (collecting cases), report and recommendation adopted, 2026 WL 475059 (S.D.N.Y. Feb. 19, 2026).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This calculation yields a "presumptively reasonable fee," commonly referred to as the "lodestar." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill, 522 F.3d at 183). Although originally developed for use in civil rights actions, "the same principle has been applied to awards of contractual attorney's fees." Byline Bank v. SDS Dining Corp., 22 CV 6439, 2024 WL 1422812, at *5 (S.D.N.Y. Apr. 3, 2024) (collecting cases). Within this broad mandate, the district court has "considerable discretion" in determining the amount of the award. Arbor Hill, 522 F.3d at 190.

An application for attorney's fees must be accompanied by contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). In addition, costs must be substantiated with invoices or other documentation. See 5316 Church Ave., LLC v. Yhun, No. 14 CV 7376, 2018 WL 6204615, at *4 (E.D.N.Y. July 18, 2018), report and recommendation adopted as modified, 2018 WL 6201709 (E.D.N.Y. Nov. 28, 2018).

Plaintiff's counsel has submitted contemporaneous time records for fees charged in this litigation. (See Chapman Decl., Ex. 6.) As of June 30, 2024, counsel billed a total of 148.9 hours at hourly rates of $605 and $995 for 2023 and $635 and $1,080 for 2024 for the associates and partner, respectively. (Id. ¶ 33.) In considering the reasonableness of attorneys'

hourly rates, the court's analysis is guided by the prevailing market rates for similar services. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). While plaintiff's counsel's hourly rates are no doubt typical for large Manhattan law firms, they are far above the range normally awarded for comparable work in this district. See Fed. Nat. Mortg. Ass'n v. 204 Ellery St., LLC, No. 23 CV 5343, 2025 WL 1309875, at *10 (E.D.N.Y. Mar. 6, 2025) (applying hourly rates of $650 for Mr. Chapman and $450 for associates); Rubin v. HSBC Bank USA, NA, No. 20 CV 4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (finding that reasonable hourly rates in the E.D.N.Y. are now $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals.) I therefore recommend that counsel's hourly rates be reduced to $650 for partner Dean Lindsay Chapman, Jr. and $450 for associate Andrew McWhorter and senior practice attorney Ashley Todd.

Next, "to determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" Litkofsky v. P & L Acquisitions, LLC, No. 15 CV 5429, 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)), report and recommendation adopted, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016). "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." Bentley Labs. LLC v. TPR Holdings LLC, No. 14 CV 6306, 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017); see also N.Y. Youth Club v. Town of Harrison, No. 12 CV 7534, 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (explaining that courts may use their discretion "to trim the fat from a

17

fee application"). Plaintiff's counsel billed a total of 40.3 hours for the partner and 101.8 for the associates. (Chapman Decl. ¶ 33, Ex. 6.) Having reviewed the billing records, I find that the time spent by the attorneys working on this matter was reasonable. The time entries are clear and substantive, and they show that plaintiff's counsel spent an appropriate amount of time litigating this action, including drafting and filing the complaint, attending court conferences, moving for appointment of a receiver and working closely with the receiver, and briefing the instant motion. See, e.g., Wilmington Tr., N.A. v. Winta Asset Mgmt., LLC, No. 20 CV 5309, 2023 WL 9603893, at *10 (S.D.N.Y. Dec. 21, 2023), report and recommendation adopted, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024) (finding that the plaintiff's lawyers spent an appropriate amount of time litigating the action, including seeking the appointment of a receiver and filing motions for summary judgment). I therefore recommend that plaintiff be awarded a total of $72,005 in attorney's fees ((40.3 × $650) + (101.8 × $450)).

Plaintiff also requests $13,180.64 in costs, which include the filing fee, service of process fees, title reports, and miscellaneous costs such as for postage, messenger fees, and public transportation. (See Chapman Decl. ¶ 32, Ex. 6.) These are the types of costs that may be recovered, and they are sufficiently documented. See HSBC Bank USA, N.A. v. PAKS Holdings, LLC, No. 19 CV 10193, 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021) (finding that sworn testimony and billing records documenting litigation costs were sufficient to support the request for reimbursement). I recommend that plaintiff's request for reimbursement of these expenses be granted.

## CONCLUSION

For the reasons explained above, I respectfully recommend that plaintiff's motion for summary judgment be granted and that the court enter a Judgment of Foreclosure and Sale in

18

the amount of $7,986,623.72, plus interest that has continued to accrue from June 30, 2024 to the date of judgment.  I further recommend that plaintiff be awarded $72,005 in attorney's fees and $13,180.64 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants upon receipt, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Merchant and to my chambers, within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

*Robert M. Levy*

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
March 2, 2026